NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

(Opposition No. 91171509 &

Cancellation No. 92045956)

**ANTHONY'S PIZZA HOLDING COMPANY, INC.,**
*Appellant,*

v.

**ANTHONY'S PIZZA & PASTA INTERNATIONAL,
INC.,**
*Appellee.*

_____

2010-1191

_____

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

_____

Decided: November 18, 2010

_____

STEWART J. BELLUS, Collard & Roe, P.C., of Roslyn, New York, for appellant.

GARRETT M. TUTTLE, Ballard Spahr LLP, of Denver, Colorado, for appellee. With him on the brief was JEFFREY J. COWMAN.

---

Before RADER, *Chief Judge*, LOURIE and MOORE, *Circuit Judges*.

PER CURIAM.

The Trademark Trial and Appeal Board ("Board") granted the petition of Anthony's Pizza & Pasta International, Inc. ("APPI") to cancel Anthony's Pizza Holding Company, Inc.'s ("APHC's") mark ANTHONY'S COAL-FIRED PIZZA (Reg. No. 3,073,126). The Board also sustained APPI's opposition to APHC's application for the mark ANTHONY'S COAL-FIRED PIZZA + Design (Serial No. 78/547,686). Because the Board correctly discerned that the newer marks are likely to cause confusion, this court *affirms*.

## I.

APPI sought to register the mark ANTHONY'S PIZZA & PASTA for restaurant services on December 15, 2000. The mark issued as Reg. No. 2,661,703 on December 17, 2002.

On January 14, 2005, APHC applied to register the mark ANTHONY'S COAL-FIRED PIZZA, in standard character form, for restaurant services. The mark issued as Reg. No. 3,073,126 on March 26, 2006. APHC also applied to register the mark ANTHONY'S COAL-FIRED PIZZA and Design, shown below, also for restaurant services.



The text "Coal-Fired Pizza" appears in the cross-bar of the letter "A."

APPI thereafter petitioned to cancel APHC's registration and filed a notice of opposition against APHC's application on the ground of likelihood of confusion. In particular, APPI alleged that through its predecessor-in-interest, licensees, and franchisees, APPI has continuously used the mark ANTHONY'S PIZZA & PASTA for restaurant services for more than twenty-three years and that APHC's marks are likely to cause confusion with APPI's mark. The proceedings were consolidated on April 8, 2007.

The Board issued its opinion on November 10, 2009, holding that APPI's mark has priority over both of APHC's marks. *Anthony's Pizza & Pasta Int'l, Inc. v. Anthony's Pizza Holding Co.*, 95 U.S.P.Q.2d 1271, 1276 (T.T.A.B. 2009). The Board also determined that APHC's marks are likely to cause confusion with APPI's mark. *Id.* at 1283. Accordingly, the Board sustained APPI's opposition to APHC's application and granted APPI's petition to cancel APHC's mark. *Id.* APHC appeals from these determinations. This court has jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

II.

This court reviews legal conclusions of the Board without deference and factual findings for substantial evidence. *In re Pacer Tech.*, 338 F.3d 1348, 1349 (Fed. Cir. 2003). Likelihood of confusion constitutes a legal determination based on underlying findings of fact. *In re Chatam Int'l, Inc.*, 380 F.3d 1340, 1342 (Fed. Cir. 2004). This court assesses a likelihood of confusion based on the factors set forth in *In re E.I. DuPont de Nemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973). "The likelihood of confusion analysis considers all *DuPont* factors for which there is record evidence but 'may focus . . . on dispositive factors, such as similarity of the marks and relatedness of the goods.'" *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1164 (Fed. Cir. 2002) (quoting *Han Beauty, Inc. v. Alberto-Culver Co.*, 236 F.3d 1333, 1336 (Fed. Cir. 2001)).

On appeal, APHC challenges the Board's conclusion on likelihood of confusion, arguing that the Board erred by ignoring its finding that "Anthony's" is a commonly used name for pizza and Italian restaurants. APHC stresses that (1) APPI is not the first Italian restaurant to use the name Anthony's; (2) the PTO has issued fifteen third-party registrations incorporating the name "Anthony's" for restaurant or food products; (3) "Anthony's" had been adopted, in whole or in part, as the name of at least twenty-nine different restaurants; and (4) a prior registration for ANTHONY'S THE WORLD'S GREATEST PIZZA pre-dates APPI's application.

This court must assess these contentions, however, through the lens of the other *DuPont* factors, as these clarify the likelihood of consumer confusion between APPI's prior mark and APHC's marks. The first two *DuPont* factors are "[t]he similarity or dissimilarity of the

marks in their entireties as to appearance, sound, connotation and commercial impression" and "[t]he similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use." 476 F.2d at 1361. Notably, the Board found that APPI's and APHC's "services are legally identical." 95 U.S.P.Q.2d at 1278. "When marks would appear on virtually identical goods or services, the degree of similarity necessary to support a conclusion of likely confusion declines." *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 877 (Fed. Cir. 1992) (citations omitted).

With respect to the similarity of the marks, the Board found that ANTHONY'S is the dominant element of APPI's mark and both of APHC's marks. 95 U.S.P.Q.2d at 1279-80. Indeed, the record shows that consumers were likely to shorten or abbreviate both ANTHONY'S PIZZA & PASTA and ANTHONY'S COAL-FIRED PIZZA to "Anthony's" or "Anthony's Pizza." Each of the marks also includes weaker descriptive terms: "Pizza & Pasta" or "Coal-Fired Pizza." With respect to APHC's composite mark, the design features comprise the letter "A" in "Anthony's" and the primary commercial impression engendered thereby is the name "Anthony's." The phrase "COAL-FIRED PIZZA" and the fire design are incorporated into the "A," are smaller than the word ANTHONY'S, and have little or no source-indicating significance because they describe goods and the way they are made. *See In re Nat'l Data Corp.* 753 F.2d 1056, 1058 (Fed. Cir. 1985) ("That a particular feature is descriptive or generic with respect to the involved goods or services is one commonly accepted rationale for giving less weight to a portion of a mark."). Thus, substantial evidence supports the Board's finding that the marks are similar.

This court does not perceive that the Board violated the anti-dissection rule by focusing on the ANTHONY'S element, particularly as that term is used by other sellers in the market. The Board properly analyzed the marks in their entireties, while appropriately focusing on the dominant element. "[T]here is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties. Indeed, this type of analysis appears to be unavoidable." *Id*. (footnote omitted).

Other *DuPont* factors reinforce the likelihood of confusion between the marks. For example, APPI offered evidence that consumers of pizza and related items at APPI's and APHC's price points are making an "impulse" decision. Because such products are generally purchased without care, consumers devote limited attention to their purchase and thus are more susceptible to confusion. *See Dupont*, 476 F.2d at 1361.

This court also considered other cases with similar elements that did not result in a likelihood of confusion. Although those cases can give some guidance, the determination of likelihood of confusion is specific to the facts and circumstances of each case. *Dupont*, 476 F.2d at 1361. Moreover, this court did not perceive that those other cases required a different result than that reached by the Board. For example, in *In re Broadway Chicken, Inc.*, 38 U.S.P.Q.2d 1559 (T.T.A.B. 1996), which APHC characterizes as particularly "on point," the Board found no likelihood of confusion between applicant's mark BROADWAY CHICKEN and preexisting registrations for BROADWAY PIZZA and BROADWAY BAR & PIZZA. The Board characterized *Broadway Chicken* as a "very close case," but found that the marks were sufficiently distinguished by the terms "Chicken" and "Pizza" to

permit consumers to recognize one restaurant as specializing in chicken and the other specializing in pizza. *Id.* at 1566. In contrast, the common term "PIZZA" in the marks in this case connotes restaurants that specialize in similar services.

This court also considered the record evidence that APPI may not have adequately policed its mark. The record, however, did not disclose any evidence of a mark confusingly similar to APPI's mark either registered with the PTO or used in an overlapping geographic area. *See Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 364 (2d Cir. 1959). Moreover, the record shows that APPI sought to minimize potential confusion with a previously registered third-party mark through its participation in a co-existence agreement that sought to establish distinct channels of trade. APPI also established a watch service for potentially similar marks—which led to this proceeding. Thus, the record does not show a reticence to protect the mark.

This court is also aware that the founder and current owner of APHC is named Anthony, while no one associated with APPI has the name "Anthony." But APHC's good faith in adopting its marks does not change the likelihood of confusion among members of the public. *See Bourjois, Inc. v. Cheatham Chem. Co.*, 47 F.2d 812, 814 (CCPA 1931). Indeed, a junior user's right to use his name "must give way to the more compelling public and private interests involved in avoiding likelihood of confusion . . . ." *Ford Motor Co. v. Ford*, 462 F.2d 1405, 1407 (CCPA 1972). Notably, the cases relied on by APHC involve marks incorporating a person's full name or last name, while the instant marks do not. *See, e.g., Brennan's, Inc. v. Brennan's Restaurant, L.L.C.*, 360 F.3d 125, 128, 135 (2d Cir. 2004) (no likelihood of confusion between TERRACE BRENNAN'S and BRENNAN'S).

The Board also considered properly APPI's coexistence agreement with the owner of the mark ANTHONY'S PIZZA THE WORLD'S GREATEST. This court has specifically endorsed coexistence agreements that accept the parties' reasonable appraisal of marketplace conditions. *Bongrain Int'l (American) Corp. v. Delice de France Inc.*, 811 F.2d 1479, 1484-85 (Fed. Cir. 1987). APPI's coexistence agreement limited the use of ANTHONY'S PIZZA THE WORLD'S GREATEST to military bases where active duty military personnel are present and assigned to duty, and prevented APPI from opening restaurants on such installations. As such, it reflected the parties' agreement to avoid confusion by limiting their operations to distinct channels of trade. That subsequent evidence revealed actual confusion between these marks highlights the challenge in distinguishing marks containing both the words "Anthony's" and "Pizza."

Finally, the Board did not grant APPI exclusive rights to the term "Anthony's." Nor did it grant APPI exclusive right to the terms "Anthony's" and "Pizza." The Board merely found that APPI's relatively weak mark bars the registration of marks "as to which the resemblance to [APPI's mark] is striking enough to cause one seeing it to assume that there is some connection, association, or sponsorship between the two." 95 U.S.P.Q.2d at 1278 (citation omitted). That is precisely consistent with the intent of the Lanham Act, which prevents registration of marks likely to cause confusion.

Accordingly, this court *affirms*.

**AFFIRMED**

## COSTS

No costs.