**LUNDAY–THAGARD COMPANY,**
Plaintiff-Appellant,

v.

**UNITED STATES DEPARTMENT of
the INTERIOR,** Defendant-Appellee.

No. 5–115.

Temporary Emergency Court of Appeals.

Argued June 11, 1985.

Decided July 16, 1985.

Judgment Entered July 26, 1985.

David A. Donohoe, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., with whom Jerry E. Rothrock and Harry R. Silver, Washington, D.C., were on brief for plaintiff-appellant.

Thomas Millet, Atty., U.S. Dept. of Justice, Civil Div., Washington, D.C., with whom Richard K. Willard, Acting Asst. Atty. Gen., and Stephen E. Hart, Atty., Dept. of Justice, Civil Div., Washington, D.C., were on brief for defendant-appellee.

William W. DePaulo and Richard H. Streeter, Wheeler & Wheeler, Washington, D.C., were on brief for amicus curiae Howell Corp.

John R. Cope, Darci L. Rock and Mary Caroline Parker, Bracewell & Patterson,

Washington, D.C., were on brief for amicus curiae Laketon Asphalt Refining, Inc.

Before METZNER, PECK and POINTER, Judges.

METZNER, Judge.

Plaintiff Lunday-Thagard Company ("Lunday-Thagard") appeals from a judgment of the Western District of Louisiana (Veron, J.) dismissing as time-barred its action for overcharges. Section 210 of the Emergency Stabilization Act ("ESA"), 12 U.S.C. § 1904 Note, as incorporated in § 5(a)(1) of the Emergency Petroleum Allocation Act ("EPAA"), 15 U.S.C. § 754. The claim arises from the sale of crude oil by defendant United States Department of Interior ("DOI"). The action also asserts a claim for breach of contract. DOI seeks affirmance of the judgment and renews its argument, pressed below, that the district court lacked jurisdiction of the action because Congress has not waived sovereign immunity.

Plaintiff, a small independent refiner, purchased federal royalty crude oil[1] from the United States Geological Survey, a subagency of the DOI, between June 1976 and January 1981 pursuant to several contracts. Each contract provided that the price to be paid would be the highest allowable by EPAA. During that period applicable EPAA regulations established the well-known two-tier price structure for the sale of domestic crude oil. 10 C.F.R. Part 212, Subpart D. See 39 Fed.Reg. 1924 (Jan. 15, 1974); 41 Fed.Reg. 4931 (Feb. 3, 1976). Under this structure the regulations required each seller to certify to its purchasers, in writing within two months of a sale, the amount and kind of oil it had sold in each price category. 10 C.F.R. § 212.-131(a)(6). If certification was not timely or was not in proper form, the subject oil was deemed to be "old crude" and could be sold lawfully only at the lower-tier price. 10 C.F.R. §§ 212.72 and 212.73.

Plaintiff's complaint, which was filed in December 1983, alleges that DOI failed to properly certify the royalty crude oil it sold but nonetheless charged plaintiff the upper-tier price. Plaintiff's theory is that failure to properly certify, without regard to the propriety of the price charged, entitles it to claim that it was overcharged and entitled to a refund of approximately $6 million, and an additional $12 million for willful overcharging, under Section 210(b). See 10 C.F.R. §§ 212.72 and 212.73.

Plaintiff also alleges that DOI imposed administrative fees and surcharges on the contract price of the crude oil and failed to reimburse it for transportation payments made to third parties, all in violation of EPAA regulations. 10 C.F.R. § 212.74. Finally, plaintiff claims that each of these alleged violations also constituted a breach of contract.

Initially, the sovereign immunity issue must be addressed to determine whether subject matter jurisdiction exists in this case. *Department of Energy v. Hunt*, 734 F.2d 816, 826 (Temp.Emer.Ct.App.1984). As the Supreme Court has time and again noted, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983).

The traditional doctrine of sovereign immunity holds that in the absence of express and unambiguous congressional consent, the United States is not subject to suit. *See United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1969).

This claim for damages rests on alleged violations of the EPAA and the regulations implementing it, except for the relatively small claim seeking reimbursement for transportation payments. *Johnson Oil Co.*

---

**1.** Under the Mineral Lands Leasing Act of 1920, 30 U.S.C. § 181 et seq., and the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq., the Secretary of the Interior is authorized to grant oil and gas leases on federally owned or controlled lands. The Secretary may take royalties accruing under the leases "in kind" and may sell the oil to defined classes of small independent refiners.

*v. Department of Energy*, 690 F.2d 191, 196 (Temp.Emer.Ct.App.1982). Resolution of the EPAA claims is therefore governed by Sections 210 and 211 of the ESA. It is these sections to which we must turn in order to determine whether Congress has waived sovereign immunity as to suits seeking damages under the EPAA. Nowhere in Section 210 which governs remedies (*see Griffin v. United States*, 537 F.2d 1130 (Temp.Emer.Ct.App.), *cert. denied*, 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 286 (1976)), do we find any express waiver.

An argument has been made that an implied waiver can be found in Section 210(b) of the ESA, which provides that an action may be brought against any "person" who violates the overcharge provisions to recover up to treble damages. The validity of this argument depends on whether the government is considered a person. On several occasions it has been held that the government does not come within the definition of a "person." *United States v. Cooper Corp.*, 312 U.S. 600, 604, 61 S.Ct. 742, 743, 85 L.Ed.2d 1071 (1941). *See also United States v. Mine Workers*, 330 U.S. 258, 275, 67 S.Ct. 677, 687, 91 L.Ed.2d 884 (1947).

It should also be noted that if it were intended by Congress to include the government within this provision, it would be unusual, and probably the first time, that treble damages were ever allowed against the United States. This makes it all the more obvious that Congress did not intend by implication to waive sovereign immunity in overcharge actions under Section 210.

It has also been argued that an implication of waiver may be found in a portion of legislative history which reads:

"Section 210 provides a traditional method by which violators of regulations may be discovered and other would-be violators may be deterred. This can be accomplished by authorizing a person suffering a legal wrong to bring a treble damage action against the violator.

This action is intended to be brought by private persons against other private persons. The Government will not bring such action nor be the subject of one." S.Rep. No. 92–507, 92d Cong., 1st Sess., reprinted in 1971 U.S.Code Cong. & Admin.News, pp. 2283, 2291.

Even assuming that the second paragraph refers only to treble damage actions, this statement is a slender reed indeed on which to imply that it was Congress' intent to permit the government to be sued for single damages.

■ We find that *McCulloch Gas Processing Corporation v. Canadian Hidrogas Resources, Ltd.*, 577 F.2d 712 (Temp. Emer.Ct.App.), *cert. denied*, 439 U.S. 831, 99 S.Ct. 109, 58 L.Ed.2d 126 (1978), controls this case. There, too, a plaintiff sought money damages against the United States. The court squarely held that Section 210 does not provide the plaintiff with a cause of action for damages against the United States, except in fifth amendment taking cases. *See Griffin v. United States, supra.* Judge Christensen in his concurrence in *McCulloch* specifically pointed out that neither Sections 210 nor 211 waived sovereign immunity, and further stated that "the limitation of the jurisdiction of the courts by § 211 to interlocutory relief in suits against the United States merely reemphasized the absence of any waiver of governmental immunity with reference to damages not constitutionally mandated." 577 F.2d at 718.

The decision in *McCulloch* appears to be at odds with the holding in *Mohawk Petroleum Corp. v. Department of the Navy*, 521 F.2d 1394 (Temp.Emer.Ct.App.1975), that federal agencies are subject to EPAA pricing regulations, and that the court was therefore empowered to issue an injunction requiring such compliance. However, it is clear, and the government has admitted on oral argument, that the issue of sovereign immunity was never raised in *Mohawk.*

After the decision in *McCulloch*, several district courts distinguished the holding in that case on the basis that it was concerned solely with the government acting in a regulatory capacity. These district courts were concerned with damage suits against

the government acting in a "commercial" capacity. *See Wesreco, Inc. v. Department of the Interior,* 618 F.Supp. 562 (D. Utah 1985); *Tipperary Refining Co. v. Department of the Interior,* No. MO–84–CA–05 (W.D.Tex. Jan. 16, 1985); *Glenrock Refinery, Inc. v. Department of the Interior,* No. C84–264B (D.Wyo. Dec. 5, 1984); *Wyoming Refining Co. v. Department of the Interior,* 547 F.Supp. 297 (D.Wyo.1982).

The case of *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), clearly points out that there is no distinction between the regulatory and private functions of the government. The Court said:

"It is too late in the day to urge that the Government is just another private litigant, for purposes of charging it with liability, whenever it takes over a business theretofore conducted by private enterprise or engages in competition with private ventures. Government is not partly public or partly private, depending on the governmental pedigree of the type of a particular activity or the manner in which the Government conducts it." (Footnote omitted.) *Id.* at 383–84, 68 S.Ct. at 2–3.

Three of these district court cases (*Tipperary Refining Co., Glenrock Refinery, Inc.,* and *Wyoming Refining Co.*) implied a waiver after distinguishing *McCulloch* because it was concerned with government regulatory activity.

*Wesreco, supra,* and *Young Refining Corp. v. Department of the Interior,* No. 82–2048 (E.D.La. July 6, 1983), found a waiver of sovereign immunity on the theory that the decision in *Mitchell, supra,* dictated the existence of a waiver in EPAA cases. *Mitchell* said:

"For the reasons set forth below, we conclude that by giving the Court of Claims jurisdiction over specified types of claims against the United States, the Tucker Act constitutes a waiver of sover-

eign immunity with respect to those claims." (Footnote omitted.) 463 U.S. at 212, 103 S.Ct. at 2965.

Clearly, *Mitchell* does not apply because the whole purpose of the Tucker Act, 28 U.S.C. §§ 1346(a)(2) and 1491(a)(1), is to permit suit against the United States, and it spells out that permission in specific terms. The EPAA merely speaks of "persons" who may sue or be sued.

■ The claim here does not fall within the Tucker Act because Section 211 places jurisdiction of EPAA claims in the district courts. On the other hand, the Tucker Act places jurisdiction of a claim for over $10,-000 in the Court of Claims. The Court of Claims has held that in view of Section 211, it has no jurisdiction under the Tucker Act to review actions under Section 210. *The Poole & Kent Co.,* 566 F.2d 1189, 214 Ct.Cl. 836 (1977).

Finally, there is no basis to the argument that Section 211 is a specific enactment which creates an exception to the jurisdictional amount limitation of over $10,000 in the Tucker Act. This argument was presented to this court in *McCulloch,* 577 F.2d at 715–16 and rejected at that time.

■ It is argued that since DOI has litigated and lost the sovereign immunity issue in the five district court cases,[2] it is collaterally estopped from raising the issue here. This contention is without merit. The Supreme Court has recently made it clear that the nonmutual offensive use of collateral estoppel sanctioned in *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), is not applicable in suits against the United States. *United States v. Mendoza,* — U.S. —, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984).

■ The claim for damages based on transportation payments does not present an EPAA issue. It is a contract claim independent of any claim created by the EPAA and is not covered by the decision of this court that breach of contract claims

---

**2.** The government settled four of the five cases after losing the waiver issue in the district court.

Only the last case (*Wesreco*) appears to be open.

going to violations of the EPAA are cognizable only as statutory claims. *Johnson Oil Co. v. Department of Energy*, 690 F.2d 191, 196 (Temp.Emer.Ct.App.1982).

The complaint does not specify the amount sought to be recovered for such damage in this lawsuit. Recovery may be had in the district court if the amount is under $10,000. If not, the matter would have to be presented to the Court of Claims. This issue is remanded to the district court for resolution.

Plaintiff presents a claim of injury which on its face appears to call for a remedy. However, we are dealing with a statute which does not afford a remedy, and the plaintiff must look to the Congress for relief.

The judgment is affirmed except that the issue of damages for transportation payments is remanded to the district court for resolution.